IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JEAN A. MONTGOMERY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 15-cv-10840 |
| v. ) | |
| ) | Judge Robert M. Dow, Jr. |
| SCIALLA ASSOCIATES, INC. and ) | |
| NATIONAL ASSOCIATION OF ) | |
| POSTAL SUPERVISORS, ) | |
| ) | |
| Defendants. ) | |

## ORDER

This matter is before the Court on Plaintiff Jean A. Montgomery's response [7] to the Court's order to show cause why this case should not be dismissed: (1) as untimely under the two-year statute of limitations that applies to actions brought under 18 U.S.C. §§ 1983 and 1985; and (2) for failure to state a claim [6]. For the reasons explained below, the Court accepts Plaintiff's complaint and grants Plaintiff's application to proceed *in forma pauperis* [4]. The Clerk of Court is directed to: (1) file Plaintiff's complaint [1], (2) issue summons for service of the complaint on Defendants Scialla Associates, Inc. and the National Association of Postal Supervisors by the U.S. Marshal and (3) send Plaintiff two blank USM-285 service forms, a magistrate judge consent form, filing instructions, and a copy of this order. Plaintiff must return the completed USM-285 service forms to the Court within 35 days. The Marshal is appointed to serve the Defendants, but will not attempt service unless and until the required forms are received.

I.   Background

On December 2, 2015, Plaintiff Jean A. Montgomery brought suit against Scialla Associates, Inc. ("Scialla")[1] and the National Association of Postal Supervisors ("NAPS") under 42 U.S.C. §§ 1983, 1985, and 1986 to redress Defendants' alleged denial of fair representation to Plaintiff at a January 16, 2013 hearing before the Merit Systems Protection Board ("MSPB"). Plaintiff also filed an application for leave to proceed *in forma pauperis* [4].

Plaintiff's complaint makes the following allegations, which the Court assumes to be true for purposes of this order: Plaintiff was a long-term employee of the U.S. Postal Service.

---

[1] Plaintiff's complaint names "Charles Schilla Association Law Firm for National Association of Postal Supervisors" as the lead defendant. Documents attached to Plaintiff's complaint indicate that the correct party name is "Scialla Associates, Inc." [1] at 8. Therefore the Court has modified the caption accordingly.

Beginning in 2009, she began notifying Postal Service officials and the Office of the Inspector General about improprieties by "postal leaders," including fraud, improper hiring, abuse of authority, and misuse of NAPS funds. [1] at 2. On November 15, 2011, Plaintiff was removed from the Postal Service without justification. Plaintiff appealed her removal to the Merit Systems Protection Board ("MSPB"). NAPS provided William Simpson ("Simpson"), an employee of Scialla, to represent Plaintiff at a January 16, 2013 hearing before the MSPB. Simpson is not an attorney. Simpson examined and cross-examined witnesses at the hearing. The ALJ, the MSPB, NAPS' executive officials, and the "Appellate Board" were notified that Simpson was examining witnesses in an MSPB hearing without bar certification. [1] at 2. Based on these allegations, Plaintiff asserts that she was "denied fair representation from [Scialla] who provided an individual who * * * was not an attorney to represent her in the Federal MSPB Court." *Id.* at 1.

Plaintiff brings claims against Defendants under 42 U.S.C. §§ 1983, 1985, and 1986. She requests the following relief: (1) payment to Plaintiff of all funds she paid to NAPS from 1982 to January 9, 2014; (2) an order requiring an outside, independent audit of NAPS Branch 14 of "all individuals who abused and misused membership funds" since 2009 and punishment of these individuals "to the highest penalty provided by the law"; (3) an order requiring the Justice Department to investigate the "long standing wrong doing in the Chicago Postal Service and NAPS Branch 14 membership funds"; and (4) an order requiring Plaintiff to be "paid for all time lost for wages and benefits from November 11, 2011." [1] at 2.

On January 4, 2016, the Court ordered Plaintiff to show cause why the § 1983 and § 1985 claims should not be dismissed as untimely under the applicable two-year statute of limitations. See *Manley v. City of Chicago*, 236 F.3d 392, 395 (7th Cir. 2001). The Court explained that, according to the complaint, Plaintiff's claims are based on the alleged denial of fair representation that occurred at her January 16, 2013 hearing and Plaintiff did not file her complaint until more than two years and ten months later, on December 2, 2015. The Court also ordered Plaintiff to show cause why the complaint should not be dismissed for failure to state a claim. The Court explained that Plaintiff did not have a constitutional right to attorney representation before the MSPB and that Plaintiff's complaint did not allege that anyone told her that Simpson was an attorney, that she mistakenly thought Simpson was an attorney, or that Simpson's performance was deficient in any way.

Plaintiff responded to the order to show cause on February 2, 2016 [7]. Her response contains the following additional factual allegations, which the Court assumes to be true for purposes of this order: Plaintiff requested that NAPS provide an attorney to represent her before the MSPB. [7] at 3. "Written documents show that Scialla, the postal supervisor's lawyer, agreed to be appellant representative." *Id.* Scialla had a fiduciary duty to Plaintiff and obligations to her under the American Bar Association rules of professional conduct. *Id.* Scialla provided Simpson to represent Plaintiff. Simpson told Plaintiff that he was an attorney from the Scialla law firm. *Id.* at 3. Plaintiff did not choose to and did not sign an agreement accepting Simpson as her attorney or representative. *Id.* at 2.

Simpson represented Plaintiff at a hearing before the MSPB administrative law judge ("AJ"), who found that Plaintiff's termination was justified. Plaintiff had "substantiated proof of

2

retaliation and reprisal for violation of a protected class [and] violation of the whistleblower's protection act." [7] at 1. However, Simpson told Plaintiff that "it was not necessary to call witnesses or submit any documents" at the hearing because "he and the AJ had decided the case would be resolved by moving Wilkins[2] and I to different offices." [7] at 3. The documents that Simpson decided not to submit to the AJ "presented overwhelming evidence the agency had falsified perjuries, planted evidence, withheld evidence and targeted [Plaintiff]." *Id.* at 2. They also contained evidence that the Post Office's key witness against her withdrew his previous statement on November 22, 2011 and shortly after was no longer employed by the Post Office. *Id.* at 4.

Plaintiff appealed to the full MSPB Board and tried to submit these documents into the record. See [7] at 3. The Board rejected the documents, "stating, in part, it appears [that the documents were] available before the record closed." *Id.* at 4. Additionally, Plaintiff told the MSPB that "an imposter was performing in a court room without certification as an attorney." *Id.* at 2. The MSPB responded that "Simpson had significan[t] experience in litigation." *Id.*

At some point (it is not clear whether this was before or after Simpson represented Plaintiff before the AJ), Plaintiff contacted Lewis Atkins, the National President of NAPS, about Simpson not being an attorney. [7] at 2. Atkins told Montgomery: "OH NO that is not true, we always provide lawyers for all of our due paying members at the MSPB board and we pay a one-time fee of $3700.00 to the ATTORNEY for MSPB board with additional funds if required and requested from the attorney." *Id.* Atkins did not know that Simpson was not an attorney. *Id.* at 3.

According to Plaintiff, these facts demonstrate that "NAPS executive[] officers conspired to interfere with her civil rights after she notified the Whistle Blower Protection Office of Inspectors General of NAPS executives wrongdoing," in violation of 42 U.S.C. § 1985. [7] at 3. Plaintiff asserts that "NAPS officials' executives were motivated to encourage [Plaintiff's] removal, providing surety that she was denied fair and equal representation, to the most serious of adverse action—a Notice of Removal." *Id.* As to Scialla, Plaintiff alleges that "Scialla breach[ed] his written agreement to perform as [Plaintiff] demand[ed]" and violated his fiduciary and ethical duties. *Id.* at 1. Plaintiff alleges that her claims against Defendants accrued on January 9, 2014, when she was unjustifiably removed from the Postal Service. *Id.* at 2.

## II.  Analysis

Plaintiff has attempted to address the two concerns raised in the Court's show-cause order [6]. As to the statute of limitations issue, Plaintiff alleges that her § 1983 and § 1985 claims did not accrue until January 9, 2014, when she was removed from the Postal Service. Assuming that is the correct accrual date, then Plaintiff's complaint was timely filed on January 4, 2016, just within the two-year limitations period.

As to whether Plaintiff has stated a claim upon which relief may be granted, Plaintiff's additional factual allegations broadly suggest an alleged conspiracy between NAPS and Scialla to deprive her of equal protection of the laws during her removal proceedings, in retribution for

---

[2] It is not clear from the record who "Wilkins" is.

Plaintiff whistleblowing on NAPS officials. These allegations might support claims under 42 U.S.C. §§ 1985 and 1986.[3] Plaintiff's additional factual allegations also suggest a potential (though likely untimely) claim against NAPS for violation of its duty of fair representation, 29 U.S.C. § 159(a), and a potential state-law claim against one or both Defendants for breach of contract.

Based on Plaintiff's additional factual allegations, the Court concludes that Plaintiff's claim survives screening and Defendants are required to respond. Although the Court has remaining concerns about the timeliness of Plaintiff's suit and whether it is barred in whole or part by prior orders of the Seventh Circuit and the Federal Circuit concerning Plaintiff's removal from the Postal Service, these are appropriate issues for Defendants to address in their answers or other responsive pleadings.

Finally, the Court must consider Plaintiff's pending application to proceed *in forma pauperis* [4]. The federal *in forma pauperis* statute is designed to ensure that indigent litigants have meaningful access to the federal courts. *Neitzke v. Williams*, 490 U.S. 319, 324 (1989). The statute allows a litigant to pursue a case in federal court without fees and costs provided that the litigant submits an affidavit which asserts an inability "to pay such fees or give security therefor." 28 U.S.C. § 1915(a)(1). In order to file and proceed on a lawsuit *in forma pauperis*, "a plaintiff's income must be at or near the poverty level." *Bulls v. Marsh*, 1989 WL 51170, at *1 (N.D. Ill. May 5, 1989); see *also Zaun v. Dobbin*, 628 F.2d 990, 992 (7th Cir. 1980). To measure poverty level, many judges in this district use the poverty guidelines promulgated by the United States Department of Health and Human Services (available at http://aspe.hhs.gov/2015-poverty-guidelines). The HHS poverty guidelines for 2015 for the 48 contiguous states and the District of Columbia set the poverty level for a household of one is $11,770. The Court relies on the financial affidavit filed along with the *in forma pauperis* motion to assess a party's claim to indigency. Plaintiff's affidavit shows that her income from all sources is under the HHS-defined poverty level for her household of one. Therefore, the Court grants Plaintiff's motion to proceed *in forma pauperis* and waives the filing fee.

## III.    Conclusion

For the reasons explained above, the Court accepts Plaintiff's complaint and grants Plaintiff's application to proceed *in forma pauperis* [4]. The Clerk of Court is directed to: (1) file Plaintiff's complaint [1], (2) issue summons for service of the complaint on Defendants Scialla Associates, Inc. and the National Association of Postal Supervisors by the U.S. Marshal and (3) send Plaintiff two blank USM-285 service forms, a magistrate judge consent form, filing instructions, and a copy of this order. Plaintiff must return the completed USM-285 service

---

[3] The Court also notes that, pursuant to Title 39 of the U.S. Code, which governs the Postal Service, "[a]ny labor organization may sue or be sued as an entity and in behalf of the employees whom it represents in the courts of the United States." 39 U.S.C. § 1208(c). A labor organization may be sued "(1) in the district in which such organization maintains its principal offices, or (2) in any district in which its duly authorized officers or agents are engaged in representing or acting for employee members." *Id.* § 1208(d). Based on the pleadings, it appears that Defendant NAPS is a labor organization that acted for Plaintiff in this District.

forms to the Court within 35 days.  The Marshal is appointed to serve the Defendants, but will not attempt service unless and until the required forms are received.

Dated: February 23, 2016                                              _____
                                                                                            Robert M. Dow, Jr.
                                                                                            United States District Judge