UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JEAN A. MONTGOMERY, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. 15-cv-10840 |
| ) | |
| CHARLES SCIALLA, WILLIAM ) | Hon. Robert M. Dow, Jr. |
| SIMPSON, SCIALLA ASSOCIATES, ) | |
| INC., and NATIONAL ASSOCIATION ) | |
| OF POSTAL SUPERVISORS ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR
MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

Defendants National Association of Postal Supervisors ("NAPS"), Scialla Associates, Inc. ("Scialla Associates"), Charles Scialla ("Scialla") and William Simpson ("Simpson") (collectively, "Defendants"), submit this Reply in support of their Motion to Dismiss Plaintiff's Second Amended Complaint ("Motion").

**INTRODUCTION[1]**

Plaintiff's Response to Defendants' Motion ("Response" or "Resp. at __") does not back up her bald assertion that her Second Amended Complaint complies with the Court's December 7 Opinion. By ignoring most of Defendants' Memorandum and making only unsupported and irrelevant arguments, Plaintiff's Response highlights that she has alleged no facts to support the existence of a contract or damages resulting from a breach of contract. Now with the assistance of counsel, Plaintiff has failed – again – to state a claim against Defendants. It is time for this case to be dismissed *with prejudice*.

---

[1] Unless otherwise stated, all capitalized terms herein shall be defined as set forth in Defendants' Memorandum in Support of Their Motion to Dismiss Plaintiff's Second Amended Complaint ("Memorandum" or "Mem. at __").

**ARGUMENT**

I.  **PLAINTIFF HAS FAILED TO STATE A BREACH OF CONTRACT CLAIM AGAINST DEFENDANTS**

   A.  **Plaintiff Fails to Allege the Existence of a Contract**

In her Response, Plaintiff finally concedes, as she must, that there was no written contract with Defendants. (*See* Resp. at 3.) Rather, she asserts that her Second Amended Complaint "alleges an oral contract supported by written documentation and oral assurances and promises upon which she relied . . . ." (*Id.*) But as demonstrated below, the allegations set forth in Plaintiff's Second Amended Complaint do not support the existence of an oral contract between Plaintiff and any of Defendants. Accordingly, Plaintiff's Second Amended Complaint should be dismissed with prejudice.

   1.  **Plaintiff's Second Amended Complaint is Devoid of "Factual Averments" Supporting the Existence of an Oral Contract**

Plaintiff's Response cites to six allegations that Plaintiff contends are the "factual averments" establishing the existence of a contract. (*Id.* at 4-6.) Although Defendants' Memorandum already debunked each of the "factual averments," Defendants will do so again here because none of those averments, either alone or together, meets the pleading threshold so plainly articulated in this Court's December 7 Opinion. (*See* Dkt. 46 at 442-43.)

*First*, Plaintiff asserts that statements made to the audience during the NAPS National Conventions in 2008 and 2012 establish that "Scialla holds himself out as an attorney." (Resp. at 4.) Plaintiff's Response, however, fails to explain how such a statement made to a group of people gives rise to a contract between Plaintiff and Defendants. Plaintiff alleges that at the 2008 National Convention, Scialla "held himself out as an attorney representing NAPS and its members." (Dkt. 47 ¶ 18.) Even assuming that this lone statement could be construed as an offer by NAPS to provide Plaintiff with a lawyer, Plaintiff does not allege facts that she accepted

2

this offer in 2008 (or at any other time) or the basic terms of the oral contract. *See Martin v. State Farm Mut. Auto. Ins. Co.*, 808 N.E.2d 47, 55 (Ill. App. Ct. 2004) ("For an oral contract to be valid and enforceable, its terms must be definite and consistent."). Plaintiff, for instance, makes no allegation regarding the scope of the representation or the types of matters in which NAPS would provide representation. Without more on such an essential term, Plaintiff's allegation cannot possibly give rise to an oral contract.

Plaintiff's reliance on statements to the audience four years later at the 2012 NAPS National Convention fares no better for the same reasons and, in particular, because Plaintiff does not even allege that she attended the National Convention in 2012. Plaintiff cannot create a contract through hindsight fact-collection and reliance on an offer that was never made to her. Allowing Plaintiff to proceed with a contract claim on such bare allegations is unreasonable even under Plaintiff's strained and incorrect interpretation of "notice pleading."

*Second*, Plaintiff asserts that her oral contract claim is supported by allegations that "NAPS trumpets benefits for its dues paying members." (Resp. at 4.) Plaintiff points to undated FAQs on NAPS' website, which allegedly state that, "[f]or approved cases, NAPS' Disciplinary Defense Fund provides a trained advocate for members facing removal." (*Id.*) Yet, this is not an allegation of fact showing that Plaintiff and Defendants exchanged an offer and acceptance, or that there was a meeting of the minds regarding definite and consistent terms. (*See* Mem. at 8-9.) *See also Banakus v. United Cont'l Holdings, Inc.*, No. 12 C 6244, 2015 WL 1343823, at *4 (N.D. Ill. Mar. 20, 2015), *aff'd sub nom. Hammarquist v. United Cont'l Holdings, Inc.*, 809 F.3d 946 (7th Cir. 2016) (statements on website did not "constitute an offer for a unilateral contract, which must be 'so definite in its terms . . . that the promises and performances to be rendered by

3

24243680.2

each party are reasonably certain'"). Nor is this the "oral contract" that Plaintiff has alleged gives rise to her claim.

But even if NAPS' website did support the existence of an oral contract (it does not), Plaintiff does not allege that NAPS (or any other Defendant) promised any NAPS member, let alone Plaintiff, that the "trained advocate" would be an attorney. (*See* Mem. at 9-10.) Plaintiff pleaded herself out of court by alleging that she received exactly what every NAPS member was offered – *i.e.*, a "trained advocate" who represented her before the U.S. Merit Systems Protection Board (the "MSPB"), a forum that is not alleged to (and does not) require representation by an attorney. (*See id.* at 10-11.)

Plaintiff's Response does not even mention her conclusory allegation that the dues she paid to NAPS (a single Defendant) were "consideration" for her (unidentified) contract with Defendants. (*See id.* at 7-8 & n.6.) She must know that such bare allegations do not support the existence of an oral contract. (*See id.* at 7-8.)

*Third*, Plaintiff asserts that "Scialla Associates, Inc. advertises it is engaged in the practice of law." (Resp. at 4.) This allegation is meaningless though, as it bears no relationship to an offer, acceptance, consideration or terms.

*Fourth*, Plaintiff asserts that "Charles Scialla and William Simpson file appearances to represent others before tribunals." (Resp. at 5.) Plaintiff does not claim, however, that Scialla or Simpson filed appearances *as attorneys* in any tribunal. In the MSPB proceedings at issue in this case, Plaintiff alleges that Simpson identified himself only as "Appellant's Representative," and Scialla is not even alleged to have filed an appearance. (*See* Mem. at 9 n.7.) And, as already noted, Plaintiff does not (and cannot) allege that the MSPB required an appellant to be represented by an attorney. (*See id.* at 10-11.) To any extent Plaintiff relies on the *MSPB's*

4

drafting errors in case captions, those errors do not support a claim against *Defendants*. (*See id.*) Moreover, such allegations are irrelevant to the existence of an oral contract between Plaintiff and Defendants.

*Finally*, Plaintiff claims that "NAPS and its officers give assurances that members would be provided legal representation" and that "NAPS approves Scialla Associates, Inc., Charles Scialla, and William Simpson to represent Plaintiff Montgomery on her appeal to the [MSPB]." (Resp. at 5.) Plaintiff fails to identify any allegations about when, where, how or by whom at NAPS the "approval" and other unspecified "assurances" were conveyed to Plaintiff. (*See* Mem. at 7.) In fact, in Plaintiff's Second Amended Complaint, there are no allegations of fact that support the existence of an offer and acceptance of a contract with definite terms.[2]

While Scialla and Simpson are willing to accept service of process and defend themselves in this action, the fact remains that Plaintiff consistently engaged in improper group pleading and her Second Amended Complaint fails to allege what any of the four Defendants individually did to form (or breach) a contract with Plaintiff. (*See id.* at 9-10.) At base, Plaintiff has failed to allege the formation of an oral contract under which Defendants agreed to provide Plaintiff an attorney in her appeal before the MSPB. *See McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011) (legal conclusions and conclusory allegations are not accepted as true); *Streeter v. Semtech Corp.*, No. 1:16-cv-4314, 2016 WL 6395573, at *2 (N.D. Ill. Oct. 28, 2016) (granting motion to dismiss claim for breach of oral contract where plaintiff merely "recite[d] the elements of contract formation, namely, an offer, acceptance, and consideration").

---

[2] Throughout her Second Amended Complaint, Plaintiff avoids using the term "represent" with reference to attorneys or lawyers, and does not allege that "legal representation" means "representation by an attorney." (*See* Mem. at 8-9.)

5

### 2. The Remainder of Plaintiff's Response Consists of Irrelevant and Baseless Arguments

To round out her Response, Plaintiff throws in a few additional irrelevant and baseless arguments. One of those arguments is that she "placed trust and confidence in Defendants who had a fiduciary duty to her." (Resp. at 8-9.) This undeveloped argument does not support Plaintiff's claim and is directly at odds with the Court's December 7 Opinion, which granted Plaintiff leave to "file an amended complaint for state-law breach of contract *only*." (Dkt. 46 at 430 (emphasis added).) Ultimately, it makes no sense, and the Court need not consider it.

Plaintiff also argues that the question of whether an oral contract exists is a question of fact. (Resp. at 7.) Yet, in *Streeter* – a case that both Plaintiff and Defendants cite – the court granted a motion to dismiss a claim for breach of an oral contract where the plaintiff merely "recite[d] the elements of contract formation, namely, an offer, acceptance, and consideration." 2016 WL 6395573, at *2. In other words, Plaintiff's own case law makes clear that she cannot defeat Defendants' Motion by conclusorily alleging the existence of an oral contract. Plaintiff's reliance on *Panko v. Advanced Appliance Service*, 371 N.E.2d 3 (Ill. App. Ct. 1977), and *Hartbarger v. SCA Services, Inc.*, 558 N.E.2d 596 (Ill. App. Ct. 1990), is misplaced. Neither case addresses a motion to dismiss or the proper handling of conclusory allegations, and both involve appeals of determinations made at trial.

Finally, Plaintiff argues that "the acts of the parties" and the parol evidence rule support the existence of an oral contract. Not so. First, as stated in Defendants' Memorandum, Plaintiff's allegations that a NAPS employee (Wesley) referred to Scialla as an attorney in a few emails and a fax cover letter do not show if, when, where or how any of Defendants offered to provide Plaintiff an attorney or if, when, where or how Plaintiff accepted such an offer. (Mem. at 8.) Plaintiff's Response does not identify any other "acts" or "parol evidence" that the Court

6

should consider, and her argument fails. Second, the case law Plaintiff cites in her Response – *Uscian v. Blacconeri*, 340 N.E.2d 618 (Ill. App. Ct. 1975), and *Hartbarger*, 558 N.E.2d 596 – is nowhere near on-point. *Uscian* deals with the enforceability of an oral contract and provides only that "[w]here there is doubt as to the meaning of a contract the courts may look to the acts of the parties for aid in construction." 340 N.E.2d at 621-23. *Hartbarger* does not address a motion to dismiss, and its analysis of the parol evidence rule does not apply here. 558 N.E.2d at 601-03.

Because Plaintiff has failed to allege the existence of a contract, her Second Amended Complaint should be dismissed.

### B. <u>Plaintiff Fails to Allege Damages</u>

Even if Plaintiff's Response were to convince the Court that Plaintiff adequately alleged the existence of an oral contract (and it should not), Plaintiff seemingly concedes that she failed to adequately allege the necessary element of damages. Plaintiff's Response does not acknowledge Defendants' argument regarding damages, and it offers no explanation as to how Plaintiff was damaged by the fact that she was represented by a non-attorney (*i.e.*, Simpson). (*See* Mem. at 10-11.) Plaintiff does not allege that she would have won her appeal before the MSPB had she been represented by an attorney, or that Simpson mishandled her appeal before the MSPB in any way. (*See id.* at 11.) Nor does Plaintiff allege that the MSPB required her or any other appellant to be represented by an attorney. (*See id.*)

Instead, Plaintiff makes undeveloped arguments about attorneys' practice of law in state and federal courts and about the remedy of specific performance. (Resp. at 6-7, 11.) These arguments fail. As Defendants stated in their Memorandum, the laws and rules governing attorneys have no bearing on this case, as Plaintiff does not allege that those laws and rules apply

7

to Defendants or in proceedings before the MSPB. (Mem. at 11 n.8.) Indeed, the MSPB recognized that Simpson "had significan[t] experience in litigation." (*Id.* at 11.)

Plaintiff's argument that she is entitled to specific performance is a non-starter. (Resp. at 11.) Plaintiff's complaint against Defendants is that they failed to provide her an attorney during her appeal before the MSPB. Providing Plaintiff an attorney at a hearing that took place years ago is not possible and also leads right back to the fact that Plaintiff has alleged no damages resulting from Simpson's representation of her before the MSPB.

Without any allegations that she suffered damages as result of a breach by Defendants, Plaintiff has failed to state a breach of contract claim against Defendants.

## II. PLAINTIFF'S SECOND AMENDED COMPLAINT SHOULD BE DISMISSED *WITH PREJUDICE*

Plaintiff and her counsel could not muster allegations of fact in her Second Amended Complaint, and they failed to make a coherent argument in support of Plaintiff's claim in her Response. At the end of her Response, Plaintiff argues that her "Second Amended Complaint represents only the first attempt at resolving deficiencies raised by plaintiff in her *pro se* complaints after she obtained local counsel." (Resp. at 11.) Yet, Plaintiff does not explain why or how "an amendment would solve outstanding problems without causing undue prejudice to the adversaries." *Knight*, 725 F.3d at 819. Defendants have done all that has been asked of them, and they have consistently shown that Plaintiff has no claim against them. Accordingly, the Court should dismiss Plaintiff's Second Amended Complaint *with prejudice*.

## CONCLUSION

WHEREFORE, Defendants respectfully request that this Court enter an Order: (a) granting their Motion to Dismiss Plaintiff's Second Amended Complaint; (b) dismissing

8

24243680.2

Plaintiff's Second Amended Complaint with prejudice; and (c) granting Defendants such other and further relief as is appropriate.

Dated: April 5, 2017                          Respectfully submitted,

/s/ Amanda M.H. Wolfman
One of the Attorneys for Defendants

Robert J. Palmersheim
Amanda M.H. Wolfman
HONIGMAN MILLER SCHWARTZ AND COHN LLP
One South Wacker Drive, 28th Floor
Chicago, Illinois 60606
Telephone: (312) 701-9300
Fax: (312) 701-9335
E-mail: rpalmersheim@honigman.com
         awolfman@honigman.com

24243680.2

## **CERTIFICATE OF SERVICE**

I, Amanda M.H. Wolfman, an attorney, hereby certify that the foregoing **Defendants' Reply in Support of Their Motion to Dismiss Plaintiff's Second Amended Complaint** was filed electronically with the Clerk of the Court using the CM/ECF System, which will automatically provide electronic notice upon all counsel of record, on the 5th day of April, 2017.

/s/ Amanda M.H. Wolfman
Amanda M.H. Wolfman

24243680.2