**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JEAN A. MONTGOMERY, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 15-cv-10840 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| CHARLES SCIALLA, WILLIAM | ) | |
| SIMPSON, SCIALLA ASSOCIATES, | ) | |
| INC., and NATIONAL ASSOCIATION | ) | |
| OF POSTAL SUPERVISORS, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

This matter is before the Court on Defendants' motions for an order limiting Plaintiff's discovery requests [100]. For the following reasons, the motion [100] is granted in part and denied in part. Defendants shall have until May 17, 2019 to respond to the written discovery requests identified in this order. This case is set for status hearing on May 22, 2019 at 9:00 a.m.

**STATEMENT**

Plaintiff Jean A. Montgomery ("Plaintiff"), a former postal service supervisor, brings suit against Defendants Charles Scialla ("Scialla"), William Simpson ("Simpson"), Scialla Associates, Inc. ("Scialla Associates"), and the National Association of Postal Supervisors ("NAPS") (collectively, "Defendants") to redress Defendants' alleged violation of a contract (or contracts) to provide legal representation to Plaintiff in her appeal before the Merit Systems Protection Board ("MSPB"). On June 21, 2018, the Court dismissed Plaintiff's proposed third amended complaint ("TAC") for failure to state a claim or to plead facts sufficient to support diversity jurisdiction. The Court explained that "the TAC must be dismissed because it does not allege any facts that plausibly suggest that Defendants' breach of their alleged promise to provide Plaintiff with an attorney at the MSPB hearing was the proximate cause of the damages that Plaintiff claims— namely, the loss of her job and salary." [85] at 3. In particular, the Court explained, "Plaintiff does not allege that (a) Defendants caused her to be removed as a postal supervisor; (b) she would have won—or even had a materially better chance of winning—the appeal of her removal if she had been represented by an attorney before the MSPB; or (c) Simpson inadequately represented her in the MSPB proceedings." [69] at 2. The Court concluded that "[w]ithout such allegations or any facts to back them up, the TAC fails to plausibly allege that Defendants' failure to provide her with an attorney caused her to lose her job" and also prevents Plaintiff from meeting the $75,000 amount-in-controversy requirement for maintaining a diversity action in federal court. *Id.* at 4. The Court further observed that, "[w]hile Plaintiff's allegations concerning the existence of a valid and enforceable contract to provide her with an attorney are also weak, the Court finds it

unnecessary to decide whether they are sufficient to state a claim for breach of contract given the clear insufficiency of Plaintiff's damages allegations." *Id.* at 5, n.1.

Following issuance of the Court's June 21 order, Plaintiff filed a motion to compel answers to discovery requests and depositions [86], contending that she needed the requested information in order to prepare a fourth amended complaint ("FAC"). Defendants opposed Plaintiff's motion and filed a motion to stay discovery [90]. In an order dated January 9, 2019 [98], the Court granted in part and denied in part both motions. The Court gave the parties ninety days to engage in targeted written discovery aimed as satisfying the notice pleading standards of Rule 8 and *Twombly/Iqbal* to state a breach of contract claim against Defendants. The Court barred detailed written discovery as well as any oral discovery absent a showing by Plaintiff of a compelling need for the information at this stage of the case. The Court also specifically noted that discovery must be proportional to the needs of the case pursuant to Federal Rule of Civil Procedure 26(b)(1) and that "the needs of the case at the moment are to determine whether Plaintiff can file a viable complaint." [98] at 2.

After several meet-and-confers concerning the scope of discovery, Plaintiff served 97 requests to admit, 44 interrogatories and 67 document requests on Defendants. See [100-1]. Defendants now move for an order "directing Plaintiff to limit her discovery requests in compliance with this Court's January 9, 2019 order, and granting Defendants such other and further relief as is appropriate." [100] at 6. They contend that "[t]he bulk of Plaintiff's discovery requests assume the existence of an agreement to provide legal representation—a fact Plaintiff has not, and cannot, prove—and instead seek information relating directly to the merits of Plaintiff's claim," including information on Simpson's investigation of potential witnesses before the MSPB hearing and questioning of witnesses at the hearing. *Id.* at 5-6. Defendants characterize Plaintiff's discovery requests as a "fishing expedition" that will "impose an undue burden and potentially avoidable costs on Defendants." *Id.* at 6. Defendants' motion does not, however, identify the specific requests that they find objectionable.

Based on the Court's review of its June 21 and January 9 orders, the Court concludes that discovery at this juncture must be limited to requests concerning: (1) the adequacy of Scialla Associates', Scialla's, and Simpson's representation of Plaintiff before the MSPB, as this evidence goes to the issue of proximate causation of damages; (2) the chances of Plaintiff prevailing if Defendants' representation had been adequate, as such evidence also goes to proximate causation of damages; and (3) the existence and terms of any contract between Plaintiff and NAPS or Plaintiff and Scialla Associates to provide Plaintiff with an attorney for her MSPB appeal.

The Court has reviewed Plaintiff's written discovery requests and determined which ones seek information concerning these three limited topics of discovery. The Court has also assessed more generally the burden that responding to the requests would impose on Defendants. While the total number of requests is arguably large, the burden to respond is reduced by the fact that Plaintiff directs many (if not most) of the requests separately to each of the four Defendants, who are represented by the same counsel.

Some of Plaintiff's requests concern Defendants' investigation of potential witnesses and cross-examination of witnesses at the MSPB hearing. These requests are relevant to establishing

proximate causation of damages—*i.e.*, that Scialla Associates', Scialla's, and Simpson's performance was deficient and lead to Plaintiff losing her MSPB appeal. These requests do not appear to be particularly burdensome. Defendants should be able to ascertain with little work whether the identified witnesses were ever interviewed prior to the MSPB hearing, or whether they were called at the hearing.

Some of Plaintiff's requests go to the issue of the existence and terms of Defendants' alleged agreement to provide Plaintiff with an attorney to represent her before the MSPB. Defendants appear to concede that these requests are relevant and will be required to respond to them.

Many of Plaintiff's requests go to whether Scialla Associates held itself out to be a law firm or Scialla or Simpson held themselves out to be attorneys. The Court will not require Defendants to respond to these requests at this juncture, because Plaintiff does not need this information to allow her to satisfy Rule 8 or remedy the deficiencies noted in the Court's June 21 order. Further, many of Plaintiff's requests on this topic are overbroad because they are not limited to representations allegedly made to Plaintiff.

Finally, a few of Plaintiff's requests ask Defendants to identify and provide all documents concerning anything "regarding the occurrences alleged in the Fourth Amended Complaint." See, e.g., [100-1] at 27. These requests are overly broad, and therefore Defendants will not be required to respond to them at this time. If Plaintiff is able to file an FAC that satisfies Rule 8, she will be allowed to renew any discovery requests that the Court has not authorized in this order, subject to any objections that Defendants choose to make.

In sum, Defendants shall be required to respond to the following requests for admission ("RFAs"), interrogatories, and requests for production ("RFPs") by May 17, 2019:

1. RFAs to NAPS: none

2. RFAs to Scialla Associates: none

3. RFAs to Scialla: 25, 26, 27 (alleged failure to investigate Lorreta Wilkins, Wanda Prater, and Erik Coates concerning prejudice toward Plaintiff)

4. RFAs to Simpson: 14 (alleged failure to question Wilkins or Prader about hostility or prejudice toward Plaintiff); 15 (training on cross-examination of hostile witnesses); 19-47 (alleged failure to interview or call as witnesses certain individuals)

5. Interrogatories to Scialla: 1 (identity of person responding to interrogatories); 2-3 (existence and terms of agreements); 13-18 (investigation of potential witnesses)

6. Interrogatories to NAPS: 1 (identity of person responding to interrogatories); 2-3 (existence and terms of agreements); 10-11 (investigation of potential witnesses); 12 (writings received or written by NAPS praising or criticizing Plaintiff)

7. Interrogatories to Scialla Associates: 1 (identity of person responding to interrogatories); 2-3 (existence and terms of agreements); 11-12 (investigation of potential witnesses); 13 (writings received or written by Scialla Associates praising or criticizing Plaintiff)

8. Interrogatories to Simpson: 1 (identity of person responding to interrogatories); 2-3, 12 (existence and terms of agreements); 13-14, 16 (investigation of potential witnesses)

9. RFPs to Scialla: 2-3 (documents evidencing agreement with Plaintiff); 10 (training to represent clients before MSPB)

10. RFPs to NAPS: 2-3 (documents evidencing agreement with Plaintiff); 10 (training to represent clients before MSPB)

11. RFPs to Scialla Associates: 2-3 (documents evidencing agreement with Plaintiff); 10 (training to represent clients before MSPB)

Dated: April 12, 2019

_____
Robert M. Dow, Jr.
United States District Judge