IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JEAN A. MONTGOMERY, ) <br> ) <br> Plaintiff, ) <br> v. ) <br> ) <br> CHARLES SCIALLA, WILLIAM ) <br> SIMPSON, SCIALLA ASSOCIATES, INC., ) <br> and NATIONAL ASSOCIATION OF ) <br> POSTAL SUPERVISORS, ) <br> ) <br> Defendants. ) <br> ) | Case No. 15-cv-10840 <br><br> Honorable Robert M. Dow, Jr. |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR
MOTION TO DISMISS PLAINTIFF'S FIFTH AMENDED COMPLAINT**

Defendants National Association of Postal Supervisors ("NAPS"), Scialla Associates, Inc. ("Scialla Associates"), Charles Scialla ("Scialla"), and William Simpson ("Simpson") (collectively, "Defendants"), pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), submit this Memorandum in support of their Motion to Dismiss Plaintiff Jean A. Montgomery's ("Plaintiff's) Fifth Amended Complaint.

**INTRODUCTION**

This Court has given Plaintiff ample opportunity to state a viable claim against Defendants. Plaintiff's Fifth Amended Complaint—spanning over 50 pages with almost 150 lengthy and irrelevant allegations—affirmatively establishes that after five years of litigation, including the benefit of targeted written discovery, she still does not have a viable claim against Defendants. Plaintiff's fundamental claim remains that she was promised an attorney in the appeal of her removal from the United States Postal Service ("Postal Service"). Yet, Plaintiff's Fifth Amended Complaint continues to ignore the Court's prior directives and still fails to allege: (1) the existence

1

of an oral or written contract between her and any Defendant; (2) that the loss of her job was caused by Defendants' alleged breach of that contract; and (3) how being represented by an attorney would have changed the outcome of the appeal. Once again, Plaintiff has demonstrated that no set of allegations will support her breach of contract claim or establish damages to support this Court's subject matter jurisdiction. Plaintiff's Fifth Amended Complaint should be dismissed *with prejudice*.

## **FACTUAL BACKGROUND**

### **I. PROCEDURAL HISTORY**

This matter has a lengthy procedural history, dating back to the filing of Plaintiff's original complaint in 2015. (Dkt. 1.) Plaintiff's Fifth Amended Complaint amounts to the fourth opportunity Plaintiff has had to state a viable claim with the assistance of counsel. (Dkt. 114). The Court has repeatedly reminded Plaintiff that she is permitted to file a complaint for "state-law breach of contract, only," warning Plaintiff that her failure to satisfy each element of such a claim would result in dismissal of her action. (Dkt. 46 at 1 [dismissing Plaintiff's amended complaint and permitting amendment for breach of contract claim]; Dkt. 63 at 8 [dismissing Plaintiff's Second Amended Complaint and reiterating its prior warning]; Dkt. 85 at 1 [dismissing Plaintiff's Third Amended Complaint and advising Plaintiff that she had "one final chance to replead" a breach of contract claim]; Dkt. 113 (reminding Plaintiff that no further amendments will be permitted].)[1]

In its most recent substantive ruling, the Court dismissed Plaintiff's Third Amended Complaint because it failed to state a claim or plead facts to support diversity jurisdiction. (Dkt.

---

[1] Defendants were not required to answer Plaintiff's initial complaint (Dkt. 6) and Plaintiff indicated her intent to file a Fifth Amended Complaint, which superseded the previously-filed Fourth Amended Complaint (Dkt. 112).

85.) Upon Plaintiff's urging, the Court permitted the parties to engage in limited written discovery "aimed at satisfying the notice pleading requirements of Rule 8 and *Twombly/Iqbal*" to "determine whether Plaintiff can file a viable complaint." (Dkt. 98.) To that end, Defendants responded to Plaintiff's discovery requests concerning: (1) the adequacy of Plaintiff's representation before the U.S. Merit Systems Protection Board ("MSPB"); (2) the existence and terms of any contract between Plaintiff and any defendant; and (3) Plaintiff's chances of prevailing in her MSBP hearing had she been represented by an attorney. (Dkt. 107.) With Defendants' discovery responses in hand, Plaintiff filed her Fifth Amended Complaint on August 6, 2019. (Dkt. 114.)

## II. PLAINTIFF'S REMOVAL FROM THE POSTAL SERVICE

NAPS is a management association of approximately 26,000 active and retired Postal Service supervisors and managers. (Dkt. 114 ¶¶ 8-9.) As a benefit of NAPS, members facing removal from the Postal Service are provided with a "trained advocate" through NAPS' Disciplinary Defense Fund ("DDF"). (*Id.* ¶¶ 20, 26.) In administering the DDF, NAPS works with Scialla Associates to provide representational services to its members. (*Id.* ¶ 25.) Scialla is the president of Scialla Associates and Simpson is an employee. (*Id.* ¶¶ 5-6.)[2] Neither Scialla or Simpson is an attorney. (*Id.* ¶¶ 5-6.) However, Simpson is a former postal supervisor and has significant experience litigating before the MSPB. (*See* Ex. A at 6; *see also* Dkt. 46 at 4 (acknowledging that the MSPB stated that Simpson had significant litigation experience).)[3]

---

[2] When referenced as a group, Scialla Associates, Scialla, and Simpson will be collectively referred to herein as the "Scialla Defendants."

[3] A true and correct copy of the MSPB Order on Petition for Review, dated October 28, 2013 is attached hereto as Exhibit A. *See Opoka v. I.N.S.,* 94 F.3d 392, 394 (7th Cir. 1996) ("[I]t is a well-settled principle that the decision of another court or agency, including the decision of an administrative law judge, is a proper subject of judicial notice.")

3

Plaintiff was previously employed by the Postal Service as a manager of Customer Service. (Dkt. 114 ¶ 3.) On April 2, 2012, Plaintiff was served with a Notice of Proposed Removal from the Postal Service "based on the charges of Failure to Report an Accident and Failure to Perform Assigned Duties." (*Id.* ¶ 29.) At the time of her removal, Plaintiff was a NAPS member. (*Id.* ¶ 27.)

Plaintiff challenged her removal before the MSPB and was represented—by way of her membership in NAPS and through the DDF—by Simpson. (*Id.* ¶ 43; *see also* Ex. B.)[4] After Plaintiff's removal was affirmed by the MSPB and her petition for review was denied, she sought relief in three other forums—all of which denied her requests for relief. *See Montgomery v. U.S. Postal Serv.*, 566 F. App'x 968 (Fed. Cir. 2014). Despite Plaintiff's attempt to introduce additional evidence and argue new defenses in her petition for review, the three-member MSPB refused to overturn Plaintiff's removal. (Ex. A.) In so ruling, the MSPB noted that "'[m]ost importantly, though, the materials the appellant submits with her petition for review provide no basis on which to revisit the administrative judge's findings of fact and conclusions of law." (*Id*. at 6.)

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) disputes the existence of the Court's subject matter jurisdiction. *Zausa v. Pellin*, No. 16-CV11440, 2017 WL 3730816, at *2 (N.D. Ill. Aug. 30, 2017). A federal district court does not have diversity jurisdiction over a civil action if the amount in controversy does not exceed $75,000. *Id.*; *see also* Dkt. 63 at 3-4. A facial challenge "require[s] only that the court look to the complaint and see if the plaintiff has sufficiently *alleged* a basis of subject matter jurisdiction." *Apex Digital, Inc. v. Sears, Roebuck &*

---

[4] A true and correct copy of the MSPB Initial Decision, dated February 1, 2013, is attached hereto as Exhibit B.

4

*Co.*, 572 F.3d 440, 443 (7th Cir. 2009) (emphasis in original). The plaintiff bears the burden of alleging subject matter jurisdiction. *Montgomery v. Market Int'l Ins. Co.*, 259 F. Supp. 3d 857, 862 (N.D. Ill. 2017).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must provide enough information to "state a claim to relief that is plausible on its face" and "raise a right to relief above the speculative level." *Thulin v. Shopko Stores Operating Co., LLC*, 771 F.3d 994, 997 (7th Cir. 2014) quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Only well-pleaded facts are accepted as true. *McCauley v. City of Chi.,* 671 F.3d 611, 616 (7th Cir. 2011). Where allegations in a complaint are conclusory, contradictory, or formulaic recitations of the elements of a claim, the complaint cannot survive a motion to dismiss. *Id*.

## ARGUMENT

### I. PLAINTIFF FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT AGAINST DEFENDANTS

Plaintiff alleges that she had an agreement with Defendants, but she fails to remedy the fatal flaws of her prior five complaints in satisfying the elements of a viable breach of contract claim. Even with the benefit of discovery and the addition of more than 80 allegations, Plaintiff's Fifth Amended Complaint does not adequately allege the mere existence of a valid and enforceable contract with any Defendant. Moreover, Plaintiff's allegations do nothing to cure her inability to plausibly suggest that Plaintiff's removal was the result of Defendants' alleged breach or that being represented by an attorney would have changed the outcome.

#### A. Plaintiff Does Not Allege the Existence of a Written or Oral Contract

As the Court explicitly laid out, to satisfy a breach of contract claim, Plaintiff must identify: (a) the parties to each alleged contract; (b) whether the contract was oral or written; (c) when the contract was made; (d) the specific relevant terms of the contract; (e) how the contract was

5

breached; and (f) how Plaintiff was damaged as a result of the breach. (Dkt. 46 at 1-2, 14.) Illinois law requires specificity "to ensure that the parties in fact have reached an agreement" and to further enable the court to determine "whether an agreement has been kept or broken." *Ass'n Benefit Servs. Inc. v. Caremark RX, Inc.*, 493 F.3d 841, 850 (7th Cir. 2007). A simple recitation of the elements is insufficient to plausibly suggest the existence of a claim. *Streetcar v. Semtech Corp.*, No. 1:16-cv-4313, 2016 WL 6395573, at *2 (N.D. Ill. Oct. 28, 2016).

Plaintiff does not offer any specifics surrounding the actual contract, but merely makes unsupported and sweeping allegations without regard to the Court's previous instructions. Tellingly, Plaintiff's allegations fail to address this Court's instruction to plead facts on each of the elements of a contract claim because her allegations remain essentially unchanged from her Third Amended Complaint, which the Court previously described as "weak." (Dkt. 85 at 5 n.1.)

Plaintiff does not attach a written contract to her Fifth Amended Complaint and fails to allege the formation of a valid written or oral contract. Once again, Plaintiff attempts to bring a contract into existence through anecdotal statements that lack any details about when, where, how, or by whom the contract was made. For example, Plaintiff asserts that statements allegedly made to an audience during the NAPS National Conventions in 2008 and 2012 established that "Scialla held himself out as an attorney." (Dkt. 114 ¶¶ 16-19.) However, even assuming that these statements made to an audience can give rise to a valid contract between Plaintiff and Defendants—it cannot—Plaintiff fails to allege who the parties to the contract were, when she accepted this offer, or the specific terms of such a contract. *Martin v. State Farm Mut. Auto. Ins. Co.,* 808 N.E.2d 47, 55 (Ill. App. Ct. 2004) ("For an oral contract to be valid and enforceable, its terms must be definite and consistent.").

6

Furthermore, Plaintiff alleges that other NAPS members labeled Scialla as an attorney, Simpson and Scialla *received* documents from the MSPB with the "Esq." suffix, and NAPS members reassured her that Scialla was an attorney. (Dkt. 114, ¶¶ 31-34, 44,124-142).[5] Based on these allegations, Plaintiff concludes that she and Defendants "entered into an agreement … whereby Defendants would and did represent her on the appeal before the [MSPB]." (Dkt. 114 ¶ 45; *see also id*. ¶¶ 38-39, 46.) These unsupported representations have nothing to do with contract formation. Again, Plaintiff's allegations lack the requisite specificity as she fails to allege if, when, where, or how any of the Defendants offered to provide Plaintiff with an attorney and when she actually accepted such an offer. *Caremark RX, Inc.*, 493 F.3d at 850 (no valid and enforceable contract where obligations of parties not set forth with requisite specificity). Moreover, Plaintiff does not allege that these NAPS members had any authority to bind NAPS to a contract.

Plaintiff's other allegations regarding her entitlement to an attorney are too uncertain and indefinite to create a valid and enforceable contract. For instance, Plaintiff alleges that she "received approval from NAPS that she would be provided legal representation on an appeal of her removal before the [MSPB]" and that Scialla and Scialla Associates "undertook the representation" of Plaintiff with NAPS' approval. (Dkt. 114 ¶¶ 35-36) Plaintiff fails to allege any details about the NAPS "approval," such as when, where, how, or by whom was this approval obtained. Nor does Plaintiff allege that the "NAPS approval" included any agreement to provide her with an attorney. Additionally, Plaintiff does not allege that there was a meeting of the minds that the "legal representation" provided would have to be an attorney. *See Martin*, 808 N.E.2d at 55 ("When it appears that the language used or the terms proposed are understood differently by

---

[5] To the extent Plaintiff relies on the MSPB's drafting errors, those errors are irrelevant to the existence of a contract between Plaintiff and Defendants.

7

the parties, there is no meeting of the minds and no contract exists."). Without these essential terms being certain and finite, no valid contract could be formed.

Despite the Court's previous admonishments, Plaintiff's Fifth Amended Complaint still fails to allege the existence of a valid written or oral contract. Without the requisite specificity, this Court can only speculate as to the existence and terms of such a contract. Accordingly, because the contract terms are too uncertain or indefinite to enforce, Plaintiff does not establish a basis for her breach of contract claim. *See, e.g.*, *Babbitt Mun. Inc. v. Health Care Serv. Corp.*, 2016 IL App. (1st) 152662, ¶ 30 (breach of contract claim dismissed due to plaintiff's failure to plead finite terms of alleged contract).

### B. Plaintiff Fails to Allege the Existence of a Contract Through NAPS Membership

Similarly, to the extent that Plaintiff is relying on the benefits of her NAPS membership to establish the existence of a contract, her claim still fails as she does not allege that there was a meeting of the minds regarding the type of representation she would receive. Plaintiff alleges that "[she] was aware and relied on the assurances that NAPS' [DDF] provides a trained advocate for members facing removal," (Dkt. 114 ¶ 26) but she does not allege when, where, or how NAPS promised that this "trained advocate" would be an attorney. And while Plaintiff claims she was "always under the impression" that the person representing her would be an attorney, she makes no allegation that at the time of contracting (whenever that was) NAPS understood "trained advocate" to mean an attorney.

Plaintiff, of course, tries to dodge this flaw with "smoke and mirrors." First, she claims that "trained advocate" must refer to an attorney because she had a "statutory right" to an attorney at her MSPB proceeding. This is not true as this court previously found. (Dkt. 85 at 4, 5 n.1.) ("[I]t is undisputed that the MSPB does not require parties to be represented by attorneys" and that

8

"Plaintiff does not have a statutory right to have an attorney represent her before the MSPB.") Plaintiff, in fact, admits that prior to the hearing she learned Simpson was not an attorney.[6] (Dkt. 114 ¶¶ 124-127.) Second, Plaintiff alleges that "trained advocate" must mean an attorney because documents and statements refer to the Scialla Defendants as attorneys. Even if these allegations are true, they are irrelevant to whether NAPs had agreed to provide her with an attorney at the time she became a NAPS member in 1982 or anytime thereafter. Because Plaintiff's allegations make clear that there was no meeting of the minds regarding the type of representation NAPS would provide, her membership in NAPS is an insufficient basis to claim the existence of a contract. *See Academy Chicago Publishers v. Cheever,* 144 Ill. 2d 24, 30 (1991) (holding that no valid or enforceable contract existed because the parties did not share a common understanding of the essential terms of the contract).

### C. Plaintiff Has No Basis To Plead She Had A Contract With The Scialla Defendants

At the very minimum, Plaintiff's breach of contract claim against the Scialla Defendants should be dismissed. Plaintiff's sparse contract allegations indicate that even if a contract existed as a result of her NAPS membership—which it did not—such agreement was with NAPS. The Scialla Defendants are not alleged to be a part of NAPS and Plaintiff does not allege the existence of any contract to which these defendants were a party. *See Reilly Partners v. Fair Isaac Corp.,* Case No. 09 CV 311, 2009 WL 1635538, at *3 (N.D. Ill. June 8, 2009) (dismissing a breach of contract claim against a defendant that was not a party to the contract in question). Under Plaintiff's headings attempting to establish the existence of a contract, she alleges that a NAPS

---

[6] Plaintiff, in fact, alleges that the Scialla Defendants perpetrated fraud on her **and everyone involved in the MSPB proceeding** by intentionally concealing that they were not attorneys and therefore were unauthorized to appear before the MSPB. (Dkt. 114 ¶¶ 48-49, 50 59-61.) This allegation is absurd and, again, contradicted by the plain fact that the MSPB rules do not require representation by an attorney.

9

area vice president made the "offer of legal representation," Plaintiff "received approval from NAPS," and the supposed "Consideration Supporting the Agreement" was based on Plaintiff's NAPS membership. (Dkt. 114 ¶¶ 31-40.) Plaintiff does not make a single allegation to establish a contractual relationship between herself and the Scialla Defendants. Plaintiff's conclusion that she had a contract with the Scialla Defendants is indicative of Plaintiff's whole approach, which is to make careless and unspecified allegations that do nothing to establish when, where, or how a contract was formed between her and any one of the defendants.

### D. Plaintiff Does Not Allege Damages Caused by Alleged Breach

This Court dismissed Plaintiff's Third Amended Complaint because it "[did] not allege any facts that plausibly suggest that Defendants' breach of their alleged promise to provide Plaintiff with an attorney at the MSPB hearing was the proximate cause of the damages that Plaintiff claims – namely the loss of her job." (Dkt. 85 at 3.) Even with the addition of almost 80 new allegations arguably aimed at curing this defect, Plaintiff's Fifth Amended Complaint fares no better. In fact, these allegations only confirm that Plaintiff cannot adequately allege *any* damages.

It is well established that damages and proximate causation are a required element for a breach of contract claim under Illinois law. *In re: Emerald Casino, Inc.,* 867 F.3d 743, 755 (7th Cir. 2017); *see also* Dkt. 85 at 4. In order to satisfy the damages element of a breach of contract claim, a plaintiff must plausibly allege damages resulting from plaintiff's alleged breach with reasonable certainty, including how the breach resulted in the specific damage. *TAS Distributing Co., Inc. v. Cummins Engine Co., Inc.,* 491 F.3d 625, 633 (7th Cir. 2007). "Threadbare recitals of the elements of a cause of action," do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A perfunctory allegation that plaintiff has suffered damages amounts to the type of threadbare recital of damages that is inadequate to state a claim. *Id.; see also Royal Sleep Prods., Inc. v. Restonic*

*Corp.*, No. 07 C 6588, 2010 WL 1172555, at *4, *7-8 (N.D. Ill. Mar. 22, 2010) (describing plaintiff's allegations as "formulaic recitations of the elements of" a breach of contract claim that fail to allege any factual content to satisfy that damages were caused by the breach).

Plaintiff's addition of tens of pages arguably aimed at satisfying the proximate cause requirement lack any allegations that plausibly suggest that Defendants' breach was the cause of Plaintiff's alleged damages. Plaintiff's damages element fails because she does not: (1) allege that an attorney would have done anything differently; and (2) if he did, how that would have changed the result of the hearing. Plaintiff alleges that, "Defendants' inadequate representation of [Plaintiff] before the [MSPB] (a) caused her to be removed as a postal supervisor; and/or (b) she would have won—or even had a materially better chance of winning … had she been represented by an attorney." (Dkt. 114 ¶ 68.) However, she does not plead "that a lawyer would have made any different (better) tactical decision that Simpson made in representing Plaintiff." (Dkt. 85 at 4.) Plaintiff does not allege any facts to support that an attorney would have utilized a different tactical approach or would have conducted the hearing in a different manner so as to obtain a different result.

Moreover, even if Plaintiff were represented by an attorney—one that presented the evidence she wanted and interviewed the witnesses she identified—it still would not have changed the MSPB's decision. Plaintiff spends tens of pages in her Fifth Amended Complaint highlighting Simpson's alleged inadequate representation with respect to the finding that Plaintiff failed to report a dog-bite incident. Yet Plaintiff ignores that the MSPB found her removal was justified on other grounds for which Plaintiff makes no allegation the Scialla Defendants representation was inadequate. In affirming Plaintiff's removal, the panel stated:

> Lastly, with regard to the penalty, we note that, despite the appellant's lengthy federal service, the agency identified prior discipline concerning some of the same

11

> misconduct involved here, i.e., failure to follow instructions and failure to perform managerial duties, and the administrative judge noted that this reflected poorly on the appellant's potential for rehabilitation, especially considering her important supervisory position.

(Ex. A at 6-7.) Plaintiff fails to allege how Simpson's representation should have or could have addressed "prior discipline" issues that contributed to her termination, let alone how advocacy by an attorney would have changed the ALJ's conclusions.

Finally, the MSPB decision squarely addresses and refutes Plaintiff's allegation that advocacy by an attorney at the removal hearing would have saved Plaintiff's job. Plaintiff devotes 36 paragraphs, some with more than 20 subparts, of her Complaint to allegations that she would have prevailed if Simpson had called certain character witnesses or introduced other evidence. Yet, Plaintiff ignores the MSPB conclusion that additional evidence would not have changed the result: "Most importantly, though, the materials the appellant submits with her petition for review provide no basis on which to revisit the administrative judge's findings of fact and conclusions of law." (Ex. A at 6.) The MSPB decision demonstrates that Plaintiff cannot meet her burden to show that Simpson's representation was inadequate or that advocacy by an attorney would have changed the result. *See W. Bend Mut. Ins. Co. v. Schumacher,* 844 F.3d 670, 678 (7th Cir. 2016) (affirming dismissal of plaintiff's complaint because it failed to show how a different defense would have produced "near or total success" in the underlying case.) Accordingly, Plaintiff's complaint should be dismissed.

## II. PLAINTIFF DOES NOT ADEQUATELY ALLEGE SUBJECT MATTER JURISDICTION

In dismissing Plaintiff's Third Amended Complaint, the Court concluded that it does not have subject matter jurisdiction because Plaintiff did not sufficiently plead allegations to suggest that Plaintiff's damages were the result of Defendants' breach. (Dkt. 85.) Plaintiff attempts to

meet the amount in controversy requirement by including a prayer for relief that seeks damages in an amount exceeding the threshold of $75,000. However, as discussed above, Plaintiff's damages claim is baseless as she fails to support the alleged damages with specific facts or evidence that plausibly entitle her to relief. *See McMillan v. Sheraton Chi. Hotel & Towers*, 567 F.3d 839, 844-845 (7th Cir. 2009) (dismissing action for want of jurisdiction because plaintiffs failed to support damages claim with "competent proof"). Because Plaintiff does not include well-plead allegations showing she meets the amount in controversy requirement for diversity jurisdiction, her Fifth Amended Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1).

## CONCLUSION

WHEREFORE, Defendants respectfully request that this Court enter an Order: (1) granting their Motion to Dismiss Plaintiff's Fifth Amended Complaint; (2) dismissing Plaintiff's Fifth Amended Complaint with prejudice against all Defendants or, at a minimum, against the Scialla Defendants ; and (3) granting Defendants such other and further relief as is appropriate.

Dated: September 6, 2019   */s/ Julie M. Mallen*
                                                       One of the attorneys for Defendants

Robert J. Palmersheim
Anand C. Mathew
Julie M. Mallen
Natasha Singh
PALMERSHEIM & MATHEW LLP
401 North Franklin Street, Suite 4S
Chicago, Illinois 60654
Tel: 312.319.1791
*rjp@thepmlawfirm.com*
*acm@thepmlawfirm.com*
*jmm@thepmlawfirm.com*
*ns@theplawfirm.com*

**CERTIFICATE OF SERVICE**

I, Julie M. Mallen, an attorney, hereby certify that the foregoing **Defendants' Memorandum In Support Of Their Motion To Dismiss Plaintiff's Fifth Amended Complaint** was filed electronically with the Clerk of the Court using the CM/ECF System, which will automatically provide electronic notice upon all counsel of record, on the 6th day of September 2019.

/s/ Julie M. Mallen