IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JEAN A. MONTGOMERY,   )   <br>   )   <br>   Plaintiff,   )   <br>   )   Case No. 15-cv-10840<br>   v.   )   <br>   )   Judge Robert M. Dow, Jr.<br>CHARLES SCIALLA, WILLIAM   )   <br>SIMPSON, SCIALLA ASSOCIATES,   )   <br>INC., and NATIONAL ASSOCIATION   )   <br>OF POSTAL SUPERVISORS,   )   <br>   )   <br>   Defendants.   )   | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jean A. Montgomery ("Plaintiff") brings this diversity action against Defendants Charles Scialla, William Simpson, Scialla Associates, Inc. (the "Scialla Defendants") and the National Association of Postal Supervisors ("NAPS") for breach of contract arising out of Defendants' alleged failure to provide Plaintiff with an attorney to represent her before the United States Merit Systems Protection Board ("MSPB"). Currently before the Court is Defendants' motion to dismiss Plaintiff's fifth amended complaint [117]. For the following reasons, Defendants' motion to dismiss [117] is granted in part and denied in part. NAPS is dismissed from the case. Plaintiff has stated a plausible professional negligence claim against the Scialla Defendants and therefore the motion to dismiss is denied as to the Scialla Defendants. Counsel are directed to file a joint status report, including a discovery plan, no later than November 23, 2020.

**I.      Background**

Plaintiff originally filed her complaint *pro se*, asserting federal claims for violation of 42 U.S.C. §§ 1983, 1985, and 1986 to redress Defendants' alleged denial of fair representation at her

January 16, 2013 hearing before the MSPB. The Court granted Defendants' motion to dismiss the complaint for failure to state a claim, but allowed Plaintiff an opportunity to replead to 1) establish that the Court has diversity jurisdiction; and 2) assert a claim for breach of contract. See [46]. Plaintiff then retained counsel, who filed a second amended complaint [47], which was dismissed due to jurisdictional defects. See [63]. Plaintiff filed a third amended complaint [64], which was dismissed due to Plaintiff's failure to allege any facts plausibly suggesting that her damages arose from Defendants' breach of an alleged promise to provide her with an attorney for her MSPB hearing or that she could satisfy the $75,000 amount-in-controversy requirement for maintaining a diversity action in federal court. See [85]. Plaintiff filed a fourth amended complaint [88] at the same time that the parties were engaged in a dispute over discovery. The Court gave Plaintiff ninety days to engage in targeted discovery, after which time she could choose to file a fifth amended complaint or rest on the fourth amended complaint. See [98]. After various extensions of time, Plaintiff filed a fifth amended complaint ("Complaint") [114], which Defendants have moved to dismiss. See [117].

The following facts are taken from the Complaint [114]. All well-pled allegations in the Complaint are assumed to be true for purposes of Defendants' motion to dismiss. See *Calderon-Ramirez v. McCament*, 877 F.3d 272, 275 (7th Cir. 2017). Plaintiff was employed by the United States Postal Service ("USPS") in Illinois for almost 45 years, until her termination in 2012. The last position she held was Manager of Customer Service at the Englewood Post Office in Chicago. From 1982 until her termination, Plaintiff was a dues-paying member of NAPS, a nonprofit management association established to "promote … the welfare of its members." [114] at 3, ¶ 11.

In 2008, Plaintiff "attended the NAPS 61st National Convention in Louisville, Kentucky where President Ted Keating yield the floor and introduced" Defendant Charles Scialla ("Scialla")

"as an attorney who would answer question for the NAPS membership." [114] at 4, ¶ 16. Scialla is the president of Defendant Scialla, Associates, Inc. ("Scialla Associates"). According to the complaint, Scialla "held himself out as an attorney representing NAPS and its members." *Id.* In 2012, the NAPS 63rd National Convention was held in Reno, Nevada, and Scialla spoke about what his firm would do for NAPS members. Among other things, Scialla said, "I have attorneys who will represent people." *Id.* at 5, ¶ 19. Scialla Associates advertises itself as a "Law Practice company." *Id.* at 6, ¶ 21. It also states on the "Frequently Asked Questions" page of its website that it "provided a trained advocate for members facing removal, reduction in grade and postal financial indebtedness (Debt Collection Act)." *Id.* ¶¶ 20-21. Plaintiff always understood that if she sought approval, NAPS would provide her with legal representation if she ever faced removal from the USPS.

On April 2, 2012, the USPS served Plaintiff with a Notice of Proposed Removal based on the charges of Failure to Report Accident and Failure to Perform Assigned Duties. The first charge was based on allegations that she failed to report that one of the mail carriers she supervised, Ronald Ford ("Ford"), had been bitten by a dog while out on his route on October 22, 2011. On October 23, 2011, Ford delivered a writing to his Union Steward indicating that he did not want to file an Accident Report about the incident. Subsequently, Area Manager Loretta Wilkins ("Wilkins") requested an investigation to determine whether Plaintiff had failed to report Ford's accident. On November 3, 2011, Gilbert Lopez ("Lopez"), an investigator for USPS, interviewed Ford. On November 9, 2011, Lopez interviewed Plaintiff. Plaintiff alleges that the November 9 meeting was the first time she ever learned about the dog-bite incident that had allegedly occurred on October 22.

Plaintiff was represented at her removal hearing by NAPS Illini Area Vice President Nancy L. Wesley. Plaintiff was removed from the USPS on January 9, 2014. She appealed her removal to the MSPB. NAPS approved her request for legal representation before the MSPB. Defendant William Simpson ("Simpson") of Scialla Associates "undertook the representation" of Plaintiff in her appeal to the MSPB. [114] at 11. Simpson is not an attorney licensed to practice law, but allegedly represented to Plaintiff that he was. Simpson signed and filed various documents in Plaintiff's case using "Esq.", which is typically used to indicate that someone is an attorney. *Id*. He also received documents from the MSPB and opposition counsel directed to "William Simpson, Esq., Scialla Associates, Inc." *Id.* At no time did Defendants inform Plaintiff or anyone else at the MSPB proceeding that Simpson and Scialla were not licensed attorneys.

As discussed in greater detail below, the Scialla Defendants allegedly provided inadequate representation to Plaintiff at her MSPB hearing. In short, Plaintiff alleges that Simpson and Scialla failed to ever interview or call at the hearing witnesses who allegedly would have shown that Wilkins and other key witnesses were not credible and had a motive to lie about Plaintiff's alleged failure to report the dog bite incident. Instead, Simpson allegedly sat by and failed to make valid objections when adverse witnesses were being questioned and failed to cross-examine adverse witnesses in an effective manner. Plaintiff contends that the Scialla Defendants' failure to provide an effective defense resulted in her losing her appeal and failing to regain her job, which had an annual salary of approximately $72,000.

## II. Legal Standard

Defendants' Rule 12(b)(6) motion challenges the legal sufficiency of the Complaint. For purposes of a motion to dismiss under Rule 12(b)(6), the Court "'accept[s] as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff.'"

4

*Calderon-Ramirez*, 877 F.3d at 275 (quoting *Kubiak v. City of Chicago*, 810 F.3d 476, 480-81 (7th Cir. 2016)). To survive a motion to dismiss under Rule 12(b)(6), the Complaint must allege facts which, when taken as true, "'plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level.'" *Cochran v. Illinois State Toll Highway Auth.*, 828 F.3d 597, 599 (7th Cir. 2016) (quoting *EEOC v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007)). The Court reads the Complaint and assesses its plausibility as a whole. See *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011).

Here, the governing Complaint [114] does not contain counts or identify particular legal theories. Although dividing allegations into counts corresponding to legal theories is "a common and often helpful approach to pleading," it is not required. *Zurbriggen v. Twin Hill Acquisition Co.*, 338 F. Supp. 3d 875, 882 (N.D. Ill. 2018); *R3 Composites Corp. v. G&S Sales Corp.*, 2020 WL 2829844, at *5 (7th Cir. June 1, 2020). As the Seventh Circuit has emphasized, to state a plausible claim for relief, a "plaintiff[] do[es] not need to plead legal theories." *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1023 (7th Cir. 2018). The Complaint "survives if it is supported by any single recognized legal theory." *Zurbriggen*, 338 F. Supp. 3d at 882. "To prevail on their Rule 12(b)(6) motions then," Defendants "must show that none of the legal theories [P]laintiff[] advance[s] against them, or any other legal theory, plausibly establishes a right to relief for the harm alleged." *Id*.

**III.     Analysis**

This is an aging case that has been delayed while Plaintiff retained an attorney, conducted discovery needed to establish diversity jurisdiction, and conducted further targeted written discovery aimed at satisfying Rule 8. As is relevant here, the Court dismissed the third amended complaint because it did "not allege any facts that plausibly suggest that Defendants' breach of

5

their alleged promise to provide Plaintiff with an attorney at the MSPB hearing was the proximate cause of the damages that Plaintiff claims—namely, the loss of her job and salary." [85] at 3. In particular, Plaintiff did not allege that "(a) Defendants caused her to be removed as a postal supervisor; (b) she would have won—or even had a materially better chance of winning—the appeal of her removal if she had been represented by an attorney before the MSPB; or (c) Simpson inadequately represented her in the MSPB proceedings." *Id*. at 4. "Without such allegations," the Court explained, "Plaintiff also cannot meet the $75,000 amount-in-controversy requirement for maintaining a diversity action in federal court." *Id*. at 3. The Court also noted that "Plaintiff's allegations concerning the existence of a valid and enforceable contract to provide her with an attorney are also weak," but found it unnecessary to determine whether they were sufficient to state a claim for breach of contract "given the clear insufficient of Plaintiff's damages allegations." *Id*. at 5 n.1.

At Plaintiff's request, the Court subsequently allowed targeted written discovery concerning: "(1) the adequacy of Scialla Associates', Scialla's, and Simpson's representation of Plaintiff before the MSPB, as this evidence goes to the issue of proximate causation of damages; (2) the chances of Plaintiff prevailing if Defendants' representation had been adequate, as such evidence also goes to proximate causation of damages; and (3) the existence and terms of any contract between Plaintiff and NAPS or Plaintiff and Scialla Associates to provide Plaintiff with an attorney for her MSPB appeal." [107] at 2. As a result of discovery, Plaintiff has developed additional facts to support her claim, the crux of which is that Defendants "defraud[ed her] into believing that she was being represented by an attorney trained to defend her," and then provided her with "virtually no defense" before the MSPB, which resulted in her wrongful termination being upheld by the MSPB. [121] at 11-12.

6

Defendants move to dismiss the Complaint on the basis that it fails to plausibly allege "(1) the existence of an oral or written contract between her and any Defendant; (2) that the loss of her job was caused by Defendants' alleged breach of that contract; and (3) how being represented by an attorney would have changed the outcome of the appeal." [118] at 1-2. The Court agrees that the breach of contract claim must be dismissed, but concludes that Plaintiff has stated a claim against the Scialla Defendants for professional negligence. Whether such a claim is timely can be taken up in a motion for summary judgment, if the Scialla Defendants so choose.

The Court previously dismissed the breach of contract claim for failure to plausibly allege that Defendants' failure to provide her with an attorney resulted in her losing her appeal to the MSPB. Plaintiff has not cured this defect with her new allegations. "A defendant who has breached a contract is liable only for the damages that the breach caused." *In re Emerald Casino, Inc.*, 867 F.3d 743, 755 (7th Cir. 2017). "In Illinois, causation is referred to as proximate causation and includes two distinct concepts: cause in fact and legal cause." *Id*. Illinois courts use two tests to determine cause in fact. "First, a defendant's breach is a cause in fact of damages if the damages would not have occurred had the defendant not breached the contract." *Id*. "Alternatively, a defendant's breach is a cause in fact of damages "if it was a material element and a substantial factor in bringing the event about." *Id*. More relevant to the Court's decision here is legal cause. "Forseeability is the touchstone" of the legal cause analysis. "A defendant's conduct is a legal cause of damages if the damages were a likely and thus a foreseeable result of the defendant's conduct." *Id*.

Despite being allowed discovery and multiple chances to plead, the Complaint does not contain facts that plausibly support an inference that Plaintiff's alleged damages—the loss of her MSPB appeal and job at the USPS—were the foreseeable result of Simpson not being a licensed

7

attorney. As the Court has repeatedly pointed out, the MSPB does not require parties to be represented by attorneys. See [6] at 3. The MSPB's regulations make clear that an aggrieved employee may be represented by either "an attorney *or other representative*" in an MSPB hearing. 5 U.S.C. § 7701(a) (emphasis added); see also Merit Systems Protection Board, Appellant's Questions and Answers, Question 16, available at http://www.mspb.gov/appeals/appellantqanda.htm (last visited July 21, 2020) ("Who can represent me in an appeal before the Board, if I choose to have a representative? You can choose any person to represent you as long as that person is willing and available to serve. You can also represent yourself. Typical representatives include private attorneys, union attorneys, and other union representatives."). Plaintiff's reliance on *Binion v. Shalala*, 13 F.3d 243, 245 (7th Cir.1994), is misplaced because that case involved a statutory right to counsel at a *disability* hearing, not a hearing before the MSPB. Further, although the Complaint alleges facts suggesting that Simpson's conduct was deficient, it does not allege any facts suggesting that this was because Simpson is a non-attorney. That is, the Complaint identifies nothing that an attorney allegedly could have done for Plaintiff to win her appeal that a non-attorney—especially one with years of experience practicing before the MSPB, like Simpson—could not also have done. Therefore, Plaintiff fails to allege a breach of contract claim against any of the Defendants.

For the same reason, Plaintiff fails to allege a plausible claim for fraudulent misrepresentation against any of the Defendants, as Plaintiff asserts in response to Defendants' motion to dismiss. See [121] at 11. The elements of a claim for fraudulent misrepresentation in Illinois are (1) a false statement of material fact; (2) known or believed to be false by the party making it; (3) intent to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; and (5) damages resulting from that reliance. *Wigod v. Wells Fargo Bank,*

8

*N.A.*, 673 F.3d 547, 569 (7th Cir. 2012). Even where a transaction has been induced by a misrepresentation, "the requirement of proximate cause limits recovery to 'those damages that which might foreseeably be expected to follow from the character of the misrepresentation itself.'" *Giammanco v. Giammanco*, 625 N.E.2d 990, 1003 (Ill. App. 1993) (quoting W. Prosser, Torts § 110, at 732 (4th ed. 1971)); see also *Merix Pharmaceutical Corp. v. Clinical Supplies Management, Inc.*, 59 F. Supp. 3d 865, 886 (N.D. Ill. 2014). Plaintiff's alleged damages do not flow from reliance on a statement that Simpson is an attorney, but rather flow from Simpson's alleged failure to properly prepare for or defend Plaintiff at the MSPB hearing. Stated differently, Simpson could have been an attorney, but if he acted in the exact same manner alleged in the complaint—and the complaint does not suggest any reason why being an attorney would have given Simpson any greater skills or motivation—Plaintiff still would have lost her appeal before the MSPB. See W.*A. Taylor & Co. v. Griswold and Bateman Warehouse Co.*, 742 F. Supp. 1398, 1405 (N.D. Ill. 1990) (explaining that under Illinois' "benefit of the bargain" rule, the court "looks at the position that the defrauded party would have been in if the false statement had been *true*").

But that does not resolve the case, because Plaintiff's amended allegations do plausibly support another claim against the Scialla Defendants. The latest iteration of the complaint has made it apparent that Plaintiff's issue is not really whether Simpson is an attorney; he did not need to be an attorney to represent Plaintiff before the MSPB and nothing alleged in the complaint suggests that Plaintiff lost her appeal due to his not being an attorney. Plaintiff's issue is that Simpson's alleged mishandling of the case caused her to lose a meritorious defense to her termination. These allegations sound in professional negligence rather than breach of contract. Plaintiff's failure to specifically identify this legal cause of action is not fatal because—as the Seventh Circuit has repeatedly stressed—plaintiffs are not required to "plead legal theories" to

9

survive a motion to dismiss, *Beaton*, 907 F.3d at 1023, and a complaint must be allowed to go forward "if it is supported by any single recognized legal theory." *Zurbriggen*, 338 F. Supp. 3d at 882; see also *Rabe v. United Airlines, Inc.,* 636 F.3d 866, 872 (7th Cir. 2011) ("A complaint need not identify legal theories, and specifying an incorrect theory is not a fatal error."); *KFC Corp. v. Iron Horse of Metairie Road, LLC*, 2020 WL 3892989, at *3 (N.D. Ill. July 10, 2020) ("it is axiomatic that a plaintiff is not required to plead legal theories at all").

This case is somewhat unique because Simpson acted as Plaintiff's legal representative, but is not an attorney. If Simpson were an attorney, Plaintiff's claim would be for legal malpractice; however, since he is not, the Court will evaluate Plaintiff's claim as one for professional negligence. In Illinois, the elements of a claim for professional negligence are (1) the existence of a professional relationship; (2) breach of a duty arising from that relationship; (3) causation; and (4) damages. See *MC Baldwin Fin. Co. v. DiMaggio, Rosario & Veraja, LLC*, 845 N.E.2d 22, 30 (Ill. 2006); *Tucker v. Soy Capital Bank & Trust Co.*, 974 N.E.2d 820, 833 (Ill. App. 2012).

Here, Plaintiff has sufficiently alleged the existence of a professional relationship between her and the Scialla Defendants, who agreed to represent her before the MSPB to challenge her termination. She has also alleged damages—the loss of salary and other benefits resulting from the MSPB upholding her termination. Further, Plaintiff has sufficiently alleged breach of a duty arising from a professional relationship and causation. In a professional negligence case, "the standard of care required of a defendant is to act as would an 'ordinarily careful professional.'" *Jones v. Chicago HMO Ltd. of Illinois*, 730 N.E.2d 1119, 1130 (Ill. 2000); see also *Advincula v. United Blood Services*, 678 N.E.2d 1009, 1020–21 (Ill. 1996). This standard of care requires professionals "to use the same degree of knowledge, skill and ability as an ordinarily careful

10

professional would exercise under similar circumstances." *Jones*, 730 N.E.2d at 1130; see also *Advincula*, 678 N.E.2d at 1020 (explaining that the standard of care "is utilized to measure the conduct of a wide variety of both medical and nonmedical professions"). Ultimately, the standard of care in a professional negligence case must be established through expert testimony. See *Jones v. Chicago HMO Ltd.*, 730 N.E.2d 1119, 1130 (Ill. 2000). But at the pleading stage, the Court focuses on the Complaint's allegations.

In analyzing the sufficiency of Plaintiff's allegations concerning duty and causation, the Court finds it helpful to reference the "case within a case" analysis that courts apply to claims for legal malpractice. To survive a motion to dismiss, "[t]he plaintiff must set forth a plausible statement not only that a breach of duty occurred but that the breach caused the plaintiff to lose a valid claim or defense in the underlying action and that, absent that loss, the underlying claim 'would have been successful.'" *West Bend Mutual Ins. Co. v. Schumacher*, 844 F.3d 670, 676 (7th Cir. 2016) (quoting *Fabricare Equip. Credit Corp. v. Bell, Boyd & Lloyd*, 767 N.E.2d 470, 474 (Ill. App. 2002)). "These elements effectively demand that the malpractice plaintiff present two cases, one showing that her attorney performed negligently, and a second or predicate 'case within a case' showing that she had a meritorious claim [or defense] that she lost due to her attorney's negligence." *Id.* at 676-77 (quoting *Mihailovich v. Laatsch*, 359 F.3d 892, 904–05 (7th Cir. 2004)).

In this case, Plaintiff's theory is that she did not know about the dog bite incident until USPS's investigator told her about it several weeks later, and thus did not fail to report the accident that kicked off the investigation of Plaintiff and her ultimate termination. According to Plaintiff, Defendants have admitted in discovery that Simpson made no effort to challenge the credibility of the key witnesses against her—Erik Coates, Loretta Wilkins, and Wanda Prater. Simpson did not question any of the witnesses about any hostility or prejudice they might harbor toward Plaintiff.

11

Further, Simpson and Scialla never interviewed and made no attempt to call at Plaintiff's hearing witnesses who allegedly would have shown that Wilkins, Prater, and Coates were not credible and had a motive to lie about Plaintiff's alleged failure to report the dog bite incident. See [114] at 38-39, 43-48. For example, the Complaint alleges that Greg Harris, a former co-work of Plaintiff, told Plaintiff to "watch her back because 'Wilkins and Prater are after you.'" *Id.* at 45. And Joe Singh, another former co-worker, was allegedly told by Prater and Nichols to "find a reason to get rid of Montgomery." *Id.* at 46; see also *id.* at 38-39 (allegations concerning other potential witnesses for Plaintiff). Instead, Simpson called only Plaintiff to testify in her own defense. These allegations plausibly support Plaintiff's claim that the Scialla Defendants performed negligently. They also plausibly suggest that if the Scialla Defendants had performed in the manner that an "ordinary careful person" would have in preparing for and participating in the hearing, Plaintiff's co-workers' plot to get her terminated on false grounds would have been uncovered and Plaintiff would not have lost her job.

     Defendants argue that better advocacy would not have save Plaintiff's job, because when Plaintiff appealed *pro se* to the full MSPB, the MSPB stated that "the materials the appellant submits with her petition for review provide no basis on which to revisit the administrative judge's findings of fact and conclusions of law." [118] at 12. Defendants assert that "[t]he MSPB decision demonstrates that Plaintiff cannot meet her burden to show that Simpson's representation was inadequate or that advocacy by an attorney would have changed the result." *Id.* This issue cannot be resolved based on the pleadings. It is not clear what materials the MSPB decision references; the decision does not provide any details. Further, the full MSPB was in a deferential posture reviewing the ALJ's decision. The Court cannot say based on one line in the full MSPB's decision that, had the Scialla Defendants properly prepared for and conducted Plaintiff's hearing, she

nonetheless would have lost her case and her job. Defendants also argue that Plaintiff has failed to allege how Simpson's representation should have or could have addressed "prior discipline" issues that contributed to her termination. [118] at 12. This is another factual issue that cannot be resolved on the pleadings. Defendants have not demonstrated that the alleged "prior discipline" issues provided an independent basis for terminating Plaintiff, and thus fail to establish that Plaintiff would have lost her job even if Simpson had successfully defended her against the charge of failing to report the dog bite incident.

In summary, the Complaint's allegations, taken together, are sufficient to state a claim for professional negligence. The Court does not consider whether Plaintiff's claim is timely under the applicable statute of limitations (or what that period would be), because the parties have not briefed the issue and the statute of limitations is an affirmative defense that need not be anticipated in a complaint. See *NewSpin Sports, LLC v. Arrow Electronics, Inc.*, 910 F.3d 293, 299 (7th Cir. 2018); *Treadwell v. Power Solutions Int'l, Inc.*, 427 F. Supp. 3d 984, 989 (N.D. Ill. 2019). Given the age of this case and the amount of discovery that has already been completed, the Court finds it appropriate to leave this issue for summary judgment, should Defendant choose to raise it, rather than having additional motion to dismiss practice on the current Complaint.

**IV.    Conclusion**

For these reasons, Defendants' motion to dismiss [117] is granted in part and denied in part. NAPS is dismissed from the case. Plaintiff has stated a plausible professional negligence claim against the Scialla Defendants and therefore the motion to dismiss is denied as to the Scialla Defendants. Counsel are directed to file a joint status report, including a discovery plan, no later than November 23, 2020.

Dated: November 6, 2020

_____
Robert M. Dow, Jr.
United States District Judge

14